# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HEBER GONZALEZ-PORTER, | Case No.: 2:17-cv-02818-APG-CWH |
| Plaintiff | **Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Partial Summary Judgment** |
| v. | |
| NYE COUNTY, NEVADA, et al., | [ECF Nos. 18, 20] |
| Defendants | |

Heber Gonzalez-Porter sues Nye County, Nye County Sheriff Sharon Wehrly, and Sheriff's Deputy Joseph McGill. Gonzalez-Porter alleges that McGill pulled him over, arrested him, and seized his car without probable cause in September 2016. He asserts a claim under 42 U.S.C. § 1983 for an unreasonable search and seizure in violation of the Fourth Amendment, violation of the Equal Protection Clause of the Fourteenth Amendment, and municipal liability against Nye County for failing to adequately train its officers. Gonzalez-Porter also asserts state-law claims for statutory theft, intentional infliction of emotional distress (IIED), civil conspiracy, and negligence.

The defendants move for summary judgment on all of Gonzalez-Porter's claims and Gonzalez-Porter moves for summary judgment on his § 1983 and negligence claims. No genuine dispute remains that McGill was justified in stopping Gonzalez-Porter, arresting him, and seizing his car. Additionally, Gonzalez-Porter fails to present evidence to support his equal-protection claim. Because there were no constitutional violations, Gonzalez-Porter's municipal-liability claim fails. Gonzalez-Porter's statutory theft claim fails because his car was seized lawfully; his IIED claim fails because he was arrested with probable cause; and he presents no evidence to support his civil conspiracy claim. Finally, Wehrly is entitled to discretionary-

function immunity on Gonzalez-Porter's negligence claim. I therefore grant the defendants' motion and deny Gonzalez-Porter's motion.

## I. BACKGROUND

Several times a year, Gonzalez-Porter drives from his hometown in Nuevo Casas Grandes, Chihuaha, Mexico to visit his family living in Pahrump.[1] While making that trip in September 2016, Gonzalez-Porter was driving his Nissan Sentra through Pahrump when McGill pulled him over.[2] McGill stopped Gonzalez-Porter because Gonzalez-Porter's car had a Mexican license plate but the license plate frame blocked which state of Mexico the plate was from.[3] McGill also noticed that the car did not have a sticker matching the license plate on the windshield, which should have been there.[4]

Gonzalez-Porter gave McGill his Mexican driver's license, but McGill believed it was not valid in the United States.[5] Gonzalez-Porter also gave McGill his registration, which was typed in Spanish.[6] McGill looked at the dashboard where the public Vehicle Identification Number (VIN) ordinarily is displayed on that make and model of car, and did not see one.[7] McGill then got permission from Gonzalez-Porter to open the door and look at the car's "B pillar," where the federal label showing the VIN also is located.[8] There was no label on the B

---

[1] ECF No. 19-2 at 4, 6 (Gonzalez-Porter Deposition at 8:17, 13:4–14:1).

[2] *Id.* at 5 (Gonzalez-Porter Deposition at 10:23–11:2); ECF No. 19-8 at 7.

[3] ECF No. 19-8 at 7.

[4] *Id.*

[5] *Id.*

[6] ECF No. 19-2 at 5 (Gonzalez-Porter deposition at 11:5–13); ECF No. 19-8 at 7.

[7] ECF Nos. 19-5 at 8; 19-8 at 7.

[8] ECF Nos. 19-2 at 5 (Gonzalez-Porter deposition at 12:1–10); 19-5 at 8; 19-8 at 7.

2

pillar and McGill also did not see the National Highway Transportation Safety Administration (NHTSA) labels that are commonly placed on Nissan body panels.[9]

McGill, a detective who investigated auto thefts for 14 years, suspected the car had been stolen and the VINs removed.[10] Gonzalez-Porter's registration paperwork listed a VIN, so McGill searched the National Insurance Crime Bureau (NICB) database and found no record of a vehicle with that VIN being manufactured.[11] McGill called the NICB and confirmed that a Nissan Sentra should have the VIN in the dashboard and on the federal label on the B pillar, even if the car had been manufactured for sale in Mexico.[12]

Based on this information, McGill arrested Gonzalez-Porter for driving without a valid license, operating an unregistered vehicle, and removal or alteration of a car's VIN; he had the car towed for further investigation.[13] Gonzalez-Porter was booked at the Nye County Detention Center and stayed there until he posted bond later that day.[14] The Nye County Sheriff's Office kept the car for eight additional days but eventually returned it to Gonzalez-Porter.[15]

Gonzalez-Porter sues McGill, Wehrly, and Nye County, asserting five causes of action against all defendants: (1) a § 1983 claim alleging violation of his constitutional rights arising out of his encounter with McGill, (2) statutory theft, (3) IIED, (4) civil conspiracy, and

---

[9] ECF Nos. 19-5 at 8; 19-8 at 7.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] ECF No. 19-5 at 6–7.
[14] ECF No. 19-8 at 23.
[15] ECF No. 19-3 at 6 (Thomas Gibson deposition at 10:3–5).

3

(5) negligence and *respondeat superior*.[16] The defendants move for summary judgment on all claims,[17] and Gonzalez-Porter moves for summary judgment on his first and fifth claims.[18]

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[19] When considering summary judgment, I must view all facts and draws all inferences in the light most favorable to the nonmoving party.[20] If reasonable minds could differ on material facts, summary judgment is not appropriate.[21]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the other party to "set forth specific facts showing that there is a genuine issue for trial."[22] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[23]

## III. ANALYSIS

### A. Count I: § 1983 Claim

To establish liability under § 1983, a plaintiff must show the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation was

---

[16] ECF No. 1.
[17] ECF No. 18.
[18] ECF No. 20.
[19] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).
[20] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
[21] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.
[23] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

4

committed by a person acting under color of state law.[24] The defendants do not contest that they acted under color of law. Thus, the dispute centers on whether the defendants violated Gonzalez-Porter's constitutional rights.

Gonzalez-Porter's complaint asserts a single cause of action under § 1983. The complaint does not clearly specify what his constitutional claims are, but from the allegations in the complaint and the briefs, the § 1983 claim centers on four alleged violations: (1) a Fourth Amendment claim challenging the constitutionality of the traffic stop, arrest, and seizure of his car, (2) a Fourteenth Amendment equal-protection claim, (3) a municipal-liability claim against Nye County for failing to adequately train its sheriff's deputies, and (4) a supervisor-liability claim against Sheriff Wehrly, claiming that she ratified McGill's actions.

### 1. Fourth Amendment

Gonzalez-Porter alleges McGill lacked probable cause to pull him over, arrest him, and seize his car. He also alleges McGill's investigation of his car's VIN was an improper search.

#### a. The Initial Stop

Officers may conduct a brief "investigatory stop" based on reasonable suspicion.[25] Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped of criminal activity."[26] This is "not a particularly high threshold."[27] While a "mere hunch" is not enough, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence

---

[24] *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

[25] *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (quotation marks omitted).

[26] *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc).

[27] *Id.*

standard."[28]  It is a "commonsense, nontechnical conception[] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"[29]  "A traffic violation alone is sufficient to establish reasonable suspicion."[30]

McGill had reasonable suspicion to investigate because he saw that Gonzalez-Porter's license plate was obstructed by the license plate frame and he did not see the required matching sticker in the windshield.[31]  This was a reasonable reason to stop Gonzalez-Porter and investigate the perceived traffic violation.  Gonzalez-Porter presents neither argument nor evidence to the contrary.

### b. Gonzalez-Porter's Arrest

"The Fourth Amendment requires police officers to have probable cause before making a warrantless arrest."[32]  "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime."[33]  "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence."[34]  It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."[35]

---

[28] *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

[29] *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

[30] *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006).

[31] ECF No. 19-8 at 7.

[32] *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009).

[33] *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007).

[34] *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc).

[35] *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1264 (9th Cir. 2012) (quoting *New York v. P.J. Video, Inc.*, 475 U.S. 868, 877–78 (1986)).

The inquiry is based on the "facts known to the arresting officer at the time of the arrest."[36] This may include objectively reasonable information provided by other law enforcement personnel.[37] The inquiry is objective.[38] Thus, the officer's subjective belief about whether or not probable cause existed is irrelevant.[39]

In civil cases, the existence of probable cause generally is a fact question for the jury.[40] But if there is no genuine issue of fact when viewing the evidence in the light most favorable to the nonmoving party, then "summary judgment is appropriate if no reasonable jury could find an absence of probable cause under the facts."[41]

Viewing the facts in the light most favorable to Gonzalez-Porter, no reasonable jury could find that McGill lacked probable cause for the arrest. McGill could not locate the VIN on Gonzalez-Porter's car despite looking in the places VINs are usually displayed.[42] McGill's investigation found no record of a vehicle being manufactured with the VIN shown on Gonzalez-Porter's registration.[43] The car also lacked the NHTSA labels that were typically placed on all body panels of Nissan vehicles.[44] Nevada Revised Statutes § 482.553 prohibits removal,

---

[36] *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

[37] *Green v. City & Cty. of S.F.*, 751 F.3d 1039, 1045 (9th Cir. 2014).

[38] *Devenpeck*, 543 U.S. at 153 ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.").

[39] *Ewing v. City of Stockton*, 588 F.3d 1218, 1231 n.20 (9th Cir. 2009) (stating that the officer "expressed doubt as to the existence of probable cause, but his subjective beliefs are irrelevant; the standard is objective").

[40] *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994).

[41] *Id.*

[42] ECF No. 19-8 at 7.

[43] *Id.*

[44] *Id.*

defacement, or alteration of VINs. No reasonable jury could find that McGill lacked probable cause to arrest Gonzalez-Porter for removing or altering the car's VIN based on these facts.

### c. Looking for the Car's VIN

The next step of the encounter about which Gonzalez-Porter complains is the "search" of his car to locate the VIN. The defendants argue that looking for the VIN does not implicate the Fourth Amendment and, even if it did, Gonzalez-Porter consented to McGill looking for it on the car's B pillar. Gonzalez-Porter does not dispute that he let McGill open the door to look for the VIN on the B pillar. And while he contends that he generally did not understand what was going on during his encounter with McGill, when asked in his deposition whether he understood that McGill was looking for the VIN when he asked to open the door, Gonzalez-Porter responded, "Yes."[45]

A police officer does not violate the Fourth Amendment by looking for a car's VIN displayed on the dashboard.[46] The Supreme Court of the United States has held that "it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile."[47] In *New York v. Class*, the Court held that neither of the required locations for a VIN ("inside the doorjamb[] or atop the dashboard") "is subject to a reasonable expectation of privacy."[48] It is constitutionally permissible for an officer to investigate "both those locations, and only those two locations" when looking for a VIN "in light of the lack of a reasonable expectation of privacy in the VIN

---

[45] ECF No. 19-2 at 6 (Gonzalez-Porter deposition at 15:16–16:5).
[46] *New York v. Class*, 475 U.S. 106, 113–114 (1986).
[47] *Id.* at 114.
[48] *Id.* at 118.

8

and the fact that the officers" in that case observed the respondent commit traffic violations.[49]
But officers cannot always enter a car "to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile. If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it."[50]

McGill, like the officer in *Class*, investigated only the two locations where a VIN would ordinarily be located. When he failed to find a VIN in plain view on the dashboard, he looked inside the car for the sticker on the B pillar.[51] Gonzalez-Porter does not allege McGill did more than that. So regardless of whether Gonzalez-Porter fully understood what was happening to give meaningful consent, McGill was justified in looking for the VIN inside the car.

### d. Impounding the Car

Gonzalez-Porter alleges that McGill unlawfully seized his car without probable cause. The defendants argue McGill had probable cause to arrest Gonzalez-Porter and believed the car was stolen. The impounding of a car qualifies as a seizure within the meaning of the Fourth Amendment.[52] However, "it is . . . well settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."[53]

---

[49] *Id.* at 118–19.
[50] *Id.* at 119.
[51] ECF No. 19-8 at 7.
[52] *See United States v. Torres*, 828 F.3d 113, 118 (9th Cir. 2016).
[53] *Payton v. New York*, 445 U.S. 573, 586–87 (1980).

9

Based on his experience as a detective investigating car thefts, McGill believed that the lack of a VIN meant that the car was likely stolen.[54] McGill arrested Gonzalez-Porter for violating the Nevada statute forbidding alteration or removal of a VIN.[55] Even without the probable cause to believe the car was stolen, the car was associated with Gonzalez-Porter's violation of the VIN alteration statute. Gonzalez-Porter points to no evidence that creates a genuine dispute of this fact. I therefore grant the defendants' motion and deny Gonzalez-Porter's motion on Gonzalez-Porter's Fourth Amendment claim.

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law.[56] To establish liability for an equal-protection violation, a plaintiff must show that the defendant acted with the intent and purpose to discriminate against him based on his membership in a protected class, or that the defendant purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment.[57]

The defendants argue that Gonzalez-Porter lacks evidence to show that he was purposefully discriminated against because of his race or that he was treated differently than similarly situated persons. Gonzalez-Porter does not respond to this argument or point to any evidence in the record to support his equal-protection claim. While Gonzalez-Porter testified in his deposition that he felt McGill was talking to him "in an aggressive way," which led him to

---

[54] ECF No. 19-8 at 7.

[55] *Id.* at 6.

[56] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[57] *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

10

believe that McGill was racist, this speculative statement does not create a triable issue of fact to survive summary judgment.[58] He presents neither argument nor evidence about other similarly situated persons being treated differently or anything beyond his speculation that he was discriminated against because of his race. I therefore grant the defendants' motion for summary judgment and deny Gonzalez-Porter's motion on this portion of his § 1983 claim.

### 3. Municipal Liability

Municipalities may not be held liable on a *respondeat superior* theory under § 1983.[59] Instead, a municipal entity may be liable when its "policy or custom . . . inflicts the injury."[60] A plaintiff must show "that the policy is the moving force behind the constitutional violation."[61] "A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact."[62] A plaintiff making such a claim must show that the training program is inadequate and that the inadequate training represents municipal policy.[63]

Gonzalez-Porter alleges that Nye County's training and disciplinary policies are inadequate and led to the various constitutional violations he suffered. But he has failed to show that he suffered a constitutional violation. His municipal-liability claim therefore fails as a

---

[58] *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

[59] *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 6658, 691 (1978).

[60] *Id.* at 694.

[61] *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

[62] *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006).

[63] *Id.*

11

matter of law.[64] So, I grant the defendants' motion and deny Gonzalez-Porter's motion as to this part of his § 1983 claim.

####    4.      **Personal Participation**

A defendant is liable under § 1983 "only upon a showing of personal participation by a defendant."[65] "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to prevent them. There is no *respondeat superior* liability under § 1983."[66] "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains].'"[67]

Gonzalez-Porter alleges that Sheriff Wehrly is liable for McGill's constitutional violations because she is responsible for the Nye County Sheriff Department's inadequate policies, which he alleges caused the violations of his rights. Gonzalez-Porter does not allege or argue that Wehrly participated in the traffic stop, arrest, or seizure of his car. He presents no evidence showing that Wehrly ratified McGill's conduct or created the training policies about which he complains. Finally, and most importantly, Gonzalez-Porter has not shown that McGill's actions violated his constitutional rights in the first place. So, even if Wehrly ratified McGill's conduct, her doing so did not lead to a violation of Gonzalez-Porter's rights. I

---

[64] *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *Quintanilla v. City of Downey*, 84 F.3d 353, 355–56 (9th Cir. 1996).

[65] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[66] *Id.*

[67] *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1991) (emphasis in original) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

12

therefore grant the defendants' motion and deny Gonzalez-Porter's motion on this portion of his § 1983 claim.

### B. Count II: Statutory Theft

In his second cause of action, Gonzalez-Porter alleges that the defendants are liable for theft under Nevada Revised Statutes § 205.0832(1). Under § 205.0832(1)(a), "a person commits theft if, without lawful authority, the person knowingly . . . controls any property of another person with the intent to deprive that person of the property." Gonzalez-Porter argues that there was no legal basis for impounding his car, so the defendants took his car without lawful authority in violation of the statute. But because the arrest and subsequent impounding of Gonzalez-Porter's car were lawful, this claim fails as a matter of law. I therefore grant the defendants' motion for summary judgment as to this claim.

### C. Count III: IIED

Count III alleges that the defendants (primarily McGill) intentionally caused Gonzalez-Porter severe emotional distress by wrongfully arresting him and keeping his car. An IIED claim requires a plaintiff to prove that the defendant engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress or bodily harm.[68] "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[69] "[P]ersons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind."[70]

---

[68] *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 147 (Nev. 2014).

[69] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation and quotations omitted).

[70] *Id.* (alteration and quotation omitted); *see also* Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

The Supreme Court of Nevada has referred to the Restatement (Second) of Torts § 46 as relevant authority for IIED claims under Nevada law.[71] The comments to the Restatement state that a police officer's conduct may rise to the level of extreme and outrageous when he engages in an "extreme abuse" of his position.[72] The comments offer examples of when a police officer's conduct may be so outrageous as to support an IIED claim, such as where the officer attempts to extort money by a threat of arrest or attempts to extort a confession by falsely telling the accused that her child has been injured in an accident and she cannot go to the hospital until she confesses. "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability."[73]

The defendants' conduct here was not extreme and outrageous as a matter of law. McGill had reasonable suspicion to pull over Gonzalez-Porter and probable cause to arrest him and impound his car. None of the alleged actions rises to the level of an extreme abuse of power sufficient to support an IIED claim. I therefore grant the defendants' motion as to this claim.

**D.  Count IV: Civil Conspiracy**

"The elements of civil conspiracy are: (a) a combination of two or more persons; (b) who, by some concerted action; (c) intend to accomplish some unlawful objective; (d) for the purpose of harming others; (e) which results in damage."[74] Gonzalez-Porter has not pointed to evidence

---

[71] *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023, 1027 (Nev. 2000); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980).

[72] Restatement (Second) of Torts § 46, cmts.

[73] *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

[74] *Collins v. Union Fed. Savings & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).

14

in the record that the defendants intended to accomplish some unlawful objective for the purpose of harming him. I therefore grant the defendants' motion as to the civil conspiracy claim.

### E. Count V: Negligent Training and Supervision

Gonzalez-Porter alleges that Sheriff Wehrly failed to properly train and supervise McGill, and that Nye County is vicariously liable for Wehrly's negligence.

No action may be brought against a state officer, employee, agency, or political subdivision that is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused."[75] Nevada looks to interpretations of the Federal Tort Claims Act for guidance on what conduct is protected by discretionary immunity.[76] The Ninth Circuit and other circuits have held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."[77]

Because Nevada looks to federal case law to determine the scope of discretionary immunity, and because federal case law consistently holds that training and supervision are acts entitled to such immunity, Wehrly is entitled to discretionary immunity on this claim. And therefore Nye County is also entitled to judgment as a matter of law on Gonzalez-Porter's vicarious-liability theory. I therefore grant the defendants' motion and deny Gonzalez-Porter's motion on this claim.

/ / / /

/ / / /

---

[75] Nev. Rev. Stat. § 41.032(2).

[76] *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).

[77] *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (collecting cases).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 18) is GRANTED** and Gonzalez-Porter's motion for partial summary judgment **(ECF No. 20) is DENIED**. The Clerk of Court is directed to enter final judgment in favor of the defendants and against Gonzalez-Porter and close this case.

DATED this 19th day of July, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE